MCDERMOTT WILL & EMERY LLP
JASON D. STRABO (SBN 246426)
jstrabo@mwe.com
2049 Century Park East, Suite 3200
Los Angeles, California  90067
(310) 277-4110

MICHAEL S. NADEL (*pro hac vice* forthcoming)
mnadel@mwe.com
500 North Capitol Street, N.W.
Washington, D.C. 20001
(202) 756-8000

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELEVATED AG, LLC and MARICOPA ORCHARDS, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> KEVIN ASSEMI, <br><br> Defendant. | No. 1:24-at-914 <br><br> **COMPLAINT AGAINST KEVIN ASSEMI** <br><br> <u>JURY TRIAL DEMANDED</u> |

Plaintiffs Elevated Ag, LLC and Maricopa Orchards, LLC respectfully bring this Complaint against Defendant Kevin Assemi for monetary damages and declaratory and injunctive relief.  Plaintiffs plead as follows:

### NATURE OF THE ACTION

1.     Kevin Assemi is a common thief, a fraudster, a forger, and a perjurer. Plaintiffs brings this action to hold him accountable.

2.     Kevin Assemi stole $360,691 from Elevated Ag, LLC ("Elevated") by directing a business partner to pay Elevated's invoices by wire to bank accounts he

MCDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

controlled rather than to Elevated's bank account. And to make matters even worse, Kevin Assemi did this using Elevated's trade name and Elevated's logo. Elevated seeks recovery of its funds and the punitive damages available under the civil theft statute.

3. Kevin Assemi must also be held responsible for his forgery and fraud. In February 2022, Kevin Assemi and his business partners (including his family) signed an LLC operating agreement establishing that Kevin Assemi holds a "45 percent" interest in Elevated. In 2023, an Assemi family business, Maricopa Orchards, LLC ("Maricopa"), was on the verge of closing a significant financing for Elevated with the bank "AgWest," formerly known as Farm Credit West. Kevin Assemi torpedoed the financing by sending AgWest a version of the Elevated's operating agreement that Kevin Assemi electronically altered, making it show, falsely, that Kevin Assemi holds a majority interest in Elevated. To be clear, this is not a matter of legal interpretation or a dispute about who actually owns what percentage of Elevated. Rather, Kevin Assemi used electronic tools to *replace* the ownership table in the operating agreement's electronic file with a different, *fake* ownership table. Then Kevin Assemi sent the fake version of the operating agreement to the bank, along with a litany of false statements regarding Maricopa and its executives. Kevin's forgery killed the loan, to Maricopa's and Elevated's great detriment, and damaged Maricopa's long-term financing relationship with AgWest.

4. Even now, Kevin Assemi is still falsely claiming to be the manager of Elevated. On July 31, 2024, Kevin Assemi submitted to the California Secretary of State a statement signed under penalty of perjury changing Elevated's address to his mother's house where he lives. On August 5, 2024, Kevin Assemi filed a separate document, also signed under penalty of perjury, purporting to amend Elevated's Articles of Organization to name himself as sole manager. Both of those documents represent perjury by Kevin Assemi. And, as recently as October 25, 2024, Kevin Assemi filed a document in another

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

COMPLAINT AGAINST KEVIN ASSEMI

case in this court stating that he "believes he is the managing member" of Elevated.  This Court must determine that he is not the managing member of Elevated.

5.   Additionally, Kevin Assemi has leveled numerous baseless allegations against the Plaintiffs here—all supported by non-facts that exist only in Kevin Assemi's fevered imagination.  In a case in this district that he later voluntarily dismissed, Kevin Assemi brought numerous claims against Maricopa and other, including claims for violation of the federal civil RICO statutes.  Kevin Assemi accused Maricopa of criminal fraud in violation of federal law.  Kevin Assemi has also accused Maricopa of stealing trade secrets, committing civil fraud, breaching a contract with him, violating fiduciary duties to him, committing professional malpractice, and violating employment laws, among other things.

6.   Because Kevin Assemi voluntarily dismissed his claims without prejudice, his allegations and claims hang over the heads of everyone he has harassed with his legal assault.  The unresolved allegations and claims impair Maricopa's reputations and business. Maricopa did not wrong Kevin Assemi or commit the torts and statutory violations of which he has accused Maricopa.  Under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, the Court should resolve the disputes that Kevin Assemi's gamesmanship has left unresolved—and resolve them against Kevin Assemi.

**THE PARTIES**

7.   Plaintiff Elevated Ag, LLC is a California limited liability company with its principal place of business in Fresno County.

8.   Plaintiff Maricopa Orchards, LLC is a California limited liability company with its principal place of business in Fresno County.

9.   Upon information and belief, Counterclaim Defendant Kevin Assemi is a citizen of California currently residing in a room at his mother's house, located at 7561 N. Cheryl Avenue, Fresno, California 93711.

COMPLAINT AGAINST KEVIN ASSEMI

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction over this action under to 28 U.S.C. § 1331 because each of Count V for violation of 15 U.S.C. § 1125, Count VI for a declaratory judgment that the federal civil RICO statutes, 18 U.S.C. §§ 1961 and 1962, have not been violated, and Count VII for a declaratory judgment that the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, has not been violated, arises under the laws of the United States.

11.     This Court has subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

12.     Kevin Assemi is subject to personal jurisdiction in California because he resides in California, has committed the tortious conduct alleged herein exclusively in California, and raised the allegations giving rise to the requested declaratory judgments in California.

13.     Venue is proper in the Eastern District of California under to 28 U.S.C. § 1391(b) because Kevin Assemi resides in this District and because a substantial part of the events and omissions giving rise to the claims occurred in this District.

**FACTS**

**Background**

14.     Kevin Assemi, a licensed attorney, is the son of Farid Assemi ("Farid"), leader of a major agricultural enterprise in the San Joaquin Valley region that includes Maricopa and other entities.

15.     For a brief period in 2019, Kevin Assemi held the position of CEO of Maricopa.

16.     Kevin Assemi proved himself to be an utterly incompetent CEO, and he was terminated after approximately six months.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

COMPLAINT AGAINST KEVIN ASSEMI

17. Maricopa did not enter into a written severance agreement with Kevin Assemi.

18. After Kevin Assemi was terminated as CEO, he convinced his family and friends to invest in Elevated, an agricultural enterprise that was created by the filing of Articles of Organization filed with the Secretary of State of California on September 15, 2020.

19. Elevated is governed by an Operating Agreement made effective September 16, 2020, which is attached hereto as Exhibit A.

20. The Operating Agreement is executed by the original members of Elevated Ag—Kevin Assemi, Maricopa; Jeremy Yurosek ("Jeremy"), Devon Yurosek ("Devon"), and Malakan Investments, LLC ("Malakan Investments").

21. Each member signed the Operating Agreement using Docusign software, which assigned the finally executed version to following identification number:

DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

22. Pursuant to Section 4.1 of the Operating Agreement, Elevated's original managers were Kevin Assemi, Devon, and Jeremy. Kevin Assemi ran Elevated's day-to-day business.

23. During the course of 2021 and 2022, Kevin Assemi's behavior became increasingly erratic, and he became estranged from his family.

24. In December 2022, the other members of Elevated amended the Operating Agreement to allow Percentage Interests to be sold with the approval of a majority of the members of Elevated.

25. Additionally, the other members removed Kevin Assemi as a manager of Elevated and appointed Farshid Assemi ("Farshid") and Nader Malakan ("Nader") as managers. *See* Exhibit B.

COMPLAINT AGAINST KEVIN ASSEMI

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

26.     The members then approved the transfer of Jeremy's and Devon's Percentage Interest of Elevated to Maricopa.

27.     From that point forward, Maricopa owned a 50% interest in Elevated, Kevin Assemi owned a 45% interest, and Malakan Investments owned a 5% interest.

28.     To protect Elevated from Kevin Assemi's bizarre conduct, the new managers of Elevated severed ties between Elevated and Kevin Assemi, except for those required by the Operating Agreement and Kevin Assemi's continuing minority ownership interest.

## Kevin Assemi's Theft of $360,691 from Elevated

29.     Elevated was a party to a series of packing and marketing agreements with Trinity Fruit Company, Inc. ("Trinity").

30.     Under those agreements, Trinity would purchase certain crops from Elevated to pack and market.  Elevated would invoice Trinity for the purchases.

31.     As the primary manager of Elevated, Kevin Assemi regularly coordinated with Trinity to handle payments of invoices.

32.     On March 9, 2023, unaware that Kevin Assemi had been removed from a management role at Elevated, Trinity sent an email to Kevin Assemi requesting wire instructions to make payments on outstanding invoices.

33.     Kevin Assemi responded that Trinity should send a wire of funds to what he claimed was Elevated's bank account at Bank of America:

COMPLAINT AGAINST KEVIN ASSEMI

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

Thank you, please send wire of funds to:

**Bank of America**

**Elevated Ag, LLC**
**Account number:**
⊠⊠⊠⊠1450
Routing Number for Wires-
**026009593**

For purposes of mail or checks address is

**Elevated Ag C/O Kevin Assemi**
**7561 N. Cheryl Ave,**
**Fresno CA, 93711**

**Warmest Regards,**
**Kevin Assemi**

# Elevated AG

7561 N. Cheryl Ave | Fresno, CA 93711
310-383-9205 | kevin@elevatedag.com | elevatedag.com | Linkedin

34.     This is the problem:  <u>Elevated has never maintained an account with Bank of America.</u>  Kevin Assemi controlled the Bank of America account to which he fraudulently directed Trinity to send payment for Elevated's invoices.  Since its founding, Elevated has maintained only one bank account, with Citizens Business Bank, ending in -1020.  Kevin Assemi instructed Trinity to transfer money belonging to Elevated and intended for Elevated <u>to Kevin Assemi personally</u>.

35.     Everything in Kevin Assemi's email to Trinity was false. By March 2023, Kevin Assemi had no role with Elevated, except as a recalcitrant minority owner.  And

Elevated was not operating from 7561 N. Cheryl Avenue in Fresno.  That is the address of Kevin Assemi's mother's house, where Kevin Assemi was staying.

36.     Kevin Assemi was attempting common theft—and it worked.  On March 13, 2023, Trinity, believing it was paying Elevated, unknowingly paid $78,200.00 to Kevin Assemi himself.

37.     Kevin Assemi did not alert Elevated to Trinity's payment.  Kevin Assemi did not pass the funds on to Elevated.  Instead, Kevin Assemi kept the $78,200.00 for himself.

38.     By June 2023, Kevin Assemi's desperation was growing.  He had gotten himself pushed out of the company he was obsessed with.

39.     Kevin Assemi's family, which had tolerated his antics for years, had exhausted its patience with him.

40.     Kevin Assemi had no job, no income, and no home of his own.  He was living with his mother.

41.     Each of the three law firms he had engaged to fight against his family had disengaged, and he had no means to pay his accumulated legal fees.

42.     But Kevin Assemi knew of one source of substantial funds:  He could return to the Trinity well.

43.     On June 23, 2023, Trinity attempted to wire "Elevated Ag c/o Kevin Assemi" a payment of $282,491.63.  The wire was unsuccessful, however, so an accountant at Trinity reached out to Kevin Assemi, still unaware of his separation from and battle with Elevated.

44.     On June 26, 2023, six months after being removed as a manager of Elevated, Kevin Assemi responded to the Trinity accountant by email.  The email is reprinted in full:

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

Hello Gail,

I apologize, for the issue. Bank of America wanted us to consolidate our business accounts for Elevated Ag with our <u>DBA</u> Farmwerx, LLC. Here is our updated wire instructions, you can make the check out tour DBA Farmwerx, LLC.

**Bank of America Wire-**
- Farmwerx, LLC
- Account number:
- ☒☒☒☒711
- Routing number:
- **026009593 (wires)**

If need be this is still the same, with Farmwerx, LLC DBA for the check again.. But the wire is preferred.
For purposes of mail or checks address is

Check Payable to Farmwerx, LLC

Elevated Ag C/ O Kevin Assemi
7561 N. Cheryl Ave,
Fresno CA, 93711

I apologize for some of the administrative issues, our family and their business is going through some issues which I have tried to help them address and it has some spill over. I am working to wrap up things. I appreciate you understanding. Thank you.

Also, what is your timing for completing the distributions and the estimated distribution amount? Thank you.

Feel free to call me on my cell 310-383-9205.

I have also copied my assistant **Jenifer** to help make sure questions and concerns are addressed and that anything of urgency get through to me quickly. Here cell is 559-770-7029 .

**Warmest Regards,**
**Kevin Assemi**



45.     Just about everything in Kevin Assemi's email is fraudulent.

46.     Farmwerx is a limited liability company created by Kevin Assemi with its principal office at his mother's house.  Farmwerx had no relationship with Elevated in June 2023.

47.     Bank of America did not want Elevated to "consolidate" Elevated's accounts with Farmwerx, because Bank of America is not and never has been Elevated's banker.

48.     No one from Bank of America could have indicated to Kevin Assemi that Elevated accounts should be consolidated with Farmwerx accounts; there were no Elevated accounts with Bank of America.

COMPLAINT AGAINST KEVIN ASSEMI

49.     The Farmwerx account numbers that Kevin Assemi provided to Trinity were for accounts controlled by Kevin Assemi and not affiliated with Elevated, and the account number was dissimilar from Elevated's account number at Citizens Bank.

50.     A "Check Payable to Farmwerx, LLC" would not have been a payment to Elevated, and was not intended by Kevin Assemi to be a payment to Elevated.

51.     There were no "administrative issues"—except that Trinity had been unable to complete a wire transfer using the fraudulent information that Kevin Assemi had provided in March 2023.

52.     Kevin Assemi was not trying "to help" his family and their business "address" issues.  Nor was Kevin Assemi "working" to "wrap" such issues up.  He was trying to steal from them.  And he did so.

53.     Trinity followed Kevin Assemi's instructions and wired the $282,491.63 to Kevin Assemi's account, rather than to Elevated.

54.     Kevin Assemi did not alert Elevated to Trinity's payment.  Kevin Assemi did not pass the funds on to Elevated.  Instead, Kevin Assemi kept the $282,491.63 for himself.

55.     In total, Kevin Assemi stole from Elevated at least $360,691.63 in payments from Trinity.

56.     That was far from the end of Kevin Assemi's dishonesty, however.

**Kevin Assemi's Forgery and False Statements to AgWest**

57.     During the same June time period that Kevin Assemi was stealing the second round of payments from Trinity, his family's business, Maricopa, was on the verge of closing a major round of financing for Elevated with AgWest.  AgWest had a long-standing business relationship with Maricopa and the Assemi family.  AgWest had previously provided loans to Maricopa and was likely to continue doing so in the future, as

COMPLAINT AGAINST KEVIN ASSEMI

demonstrated by its intention to loan money to Elevated, of which Maricopa was the 50 percent plurality owner.

58.    Kevin Assemi, who is a former executive with Maricopa, knew of the business relationship between Maricopa and AgWest.  Somehow, Kevin Assemi got wind of the AgWest transaction involving Elevated.

59.    Kevin Assemi became determined to stop the transaction as a means of creating leverage to force his family to give him money that he desperately needed and believed himself entitled to.

60.    On June 29, 2023, Kevin Assemi emailed Kevin Layne, an AgWest vice president.  Kevin Assemi wrote to Kevin Layne, in part: "I am the sole manager [of Elevated], see page 8 section [4.1], having sole authority to choose manager as majority owner based on our initial contributions-which you will find on page 2, section 2.1, including Maricopa['s] contributions in kind."

61.    All of this was false and fraudulent.  Kevin Assemi was not the "sole manager" of Elevated, nor a manager at all, having been removed by the other members six months earlier.  Nor was Kevin Assemi the majority owner of Elevated.  At no point did Kevin Assemi hold more than 45 percent ownership of Elevated.  And in June 2023, Kevin Assemi had no authority whatsoever with respect to Elevated.

62.    But Kevin Assemi's statements to Kevin Layne were not mere unsupported assertions.  Kevin Assemi supported them with a forged version of the Operating Agreement, which Kevin Assemi used computer software to create.  Kevin Assemi transmitted the forged version to Kevin Layne by email.

63.    The forged document that Kevin Assemi sent to Kevin Layne bears the same Docusign ID as the real Operating Agreement:

DocuSign Envelope ID: 5F6C9C5A-1AD5-46B6-846E-98BD9683F19C

COMPLAINT AGAINST KEVIN ASSEMI

But it is not the same document.  It is a fake.

64.    Section 2.1 of the Operating Agreement sets forth the members' percentage interests in Elevated:

> 2.1    Percentage Interests in Company.  In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:
>
> | Member | Percentage Interest |
> |--------|---------------------|
> | Kevin | 45 percent |
> | Jeremy | 5 percent |
> | Devon | 5 percent |
> | Malakan | 5 percent |
> | Maricopa | 40 percent |

65.    In the forged version that Kevin Assemi sent to Kevin Layne, he replaced Section 2.1:

> 2.1    Percentage Interests in Company.  In exchange for their initial capital contributions made by each Member as shown on the books and records of the Company, the Percentage Interests of the Company are held as follows:
>
> | Member | Initial Capital Contribution* | Percentage Interest | |
> |--------|-------------------------------|--------------------|---|
> | 3020 · Maricopa Equity (in Kind see Schedule) | $      5,740,560 | 40% | |
> | 3040 · Kevin Assemi Equity | $      8,266,363 | 57% | |
> | 3060 · Nader Malakan Equity | $         420,000 | 3% | |
> | 3080 · Jeremy Yurosek Equity | $              - | 0% | Resigned |
> | 3090 · Devon Yurosek Equity | $              - | 0% | Resigned |
> | | 14,426,923 | 100% | |
>
> (a) Maricopa Contribution in Kind:
>
> | Contributions | APNS | Water Rights (CAW) | AF/Acre | Acres | Maricopa Valuation On Contribution | Total |
> |---------------|------|--------------------|---------|-------|-----------------------------------|-------|
> | Basic School Farm Land Only | 220-211-24 | 547.8 | 2.79 | 196.4 | $   14,000 | $2,749,320 |
> | | | None | | 309.6 | $     2,000 | $   619,240 |
> | Gardner Field Farm (Land Only) | 220-050-71 | | | 186 | $     2,000 | $   372,000 |
> | Yurosek Ownership Purchase | | | | | | $2,000,000 |
> | **Maricopa Contributions** | | | | | | **$5,740,560** |
> | *Valuation of interest by Maricopa has not been reduced for options rights by other partners or true up on initial valuation in kind.* | | | | | | |

Sitting at a keyboard, Kevin Assemi purportedly transformed himself into the 57 percent majority owner of Elevated.

COMPLAINT AGAINST KEVIN ASSEMI

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

66.     Kevin Assemi also altered Section 4.1 of the Operated Agreement, making it appear to provide:  "The Members agree Kevin Assemi, shall manage and control the Company's business and affairs, for the benefit of all Members, as the 'Managers' of the Company and each a 'Manager.' Jeremy Yurosek and Devon Yurosek have resigned on or before December 27, 2022 as Managers leaving Kevin Assemi as sole manager."

67.     Kevin Assemi did *not* provide to Kevin Layne the Action by Written Consent that the Managers adopted on December 28, 2022:

> In accordance with Section 17704.07 of the California Revised Uniform Limited Liability Company Act and Section 2.8 of the Operating Agreement (the "Operating Agreement") of Elevated Ag, LLC, a California limited liability company (the "Company") dated effective as of September 16, 2020, the undersigned constituting Members holding a majority of the outstanding Percentage Interests of the Company take the following actions without a meeting:
>
> REMOVAL OF MANAGER
>
> 1.  Kevin Assemi is removed as a Manager of the Company as of the Effective Date of this Action.
>
> APPOINTMENT OF ADDITIONAL MANAGERS
>
> 1.  Nader Malakan and Farshid Assemi are hereby appointed to be Managers of the Company as of the Effective Date of this Action.

68.     Kevin Assemi implored Kevin Layne:  "Please do not close the loan and let's discuss."

69.     It took only 28 minutes for Kevin Assemi's attempted sabotage of the loan and Maricopa's relationship with AgWest to succeed.  Kevin Layne wrote:  "I just received the email below with an attachment also attached to this email. The attachment shows many contradictions in ownership, management, and signatory powers for Elevated Ag. Both documents appear to be legitimate and I'm unable to determine which one is accurate. Unfortunately, I'm going to have to put this loan on hold until all owners can come to an agreement and provide me with documentation to that effect."

70.     Later in the day, Kevin Assemi sent another email to a group of recipients including Kevin Layne at AgWest. Kevin Assemi wrote, in part:  "I have now contacted the

COMPLAINT AGAINST KEVIN ASSEMI

Farm Credit Administration directly through their Criminal Referral program to report the attempted fraudulently recording (sic) a loan on Elevated Ag's property without authority to do so and appropriate the money for non-Elevated Ag own use (sic) and all without even informing me."

71.     Kevin Assemi further stated:  "I have already reached out to the enforcement branch of California's lending agency DFPI and will be advancing my reporting of your misconduct regarding the Yurosek loan and SME Partners and retaliatory action.  This includes all correspondence from the Yuroseks, John [Bezmalinovic], [Jason Hollrah], and others making it very clear your misconduct (sic)."

72.     Kevin Assemi further stated:  "Lastly, early on reached out to higher up enforcement agencies regarding this misconduct and other significant misconduct which there have been recent newspaper articles published (sic.).  I have fully documented this now and I will be circling back to report to this all to this agency as well."

73.     Kevin Assemi's statements to AgWest to the contrary were false.  No one at Maricopa or Assemi Group attempted fraudulent recording of a loan or other misconduct.  The only fraud was by Kevin Assemi.  The only misconduct was by Kevin Assemi.

74.     As Kevin Assemi intended, as a result of the false information provided by Kevin Assemi, AgWest backed out of the financing that it been prepared to provide.  The loss of that financing significantly harmed Elevated's enterprise.

75.     The loss of the financing also harmed Maricopa, because a portion of the loan would have been used to pay off debt that Elevated owned to Maricopa.

76.     The false information by Kevin Assemi also harmed and disrupted Maricopa's relationship with AgWest.  Since Kevin Assemi's misconduct, Maricopa has been unable to obtain financing from AgWest, which has significantly harmed Maricopa's

COMPLAINT AGAINST KEVIN ASSEMI

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

enterprise.  Several loans from AgWest to Maricopa that were under review did not go forward as a result of Kevin Assemi's misconduct.

**Kevin Assemi's False Claims**

77.     On December 15, 2023, Kevin Assemi filed a 31-count Complaint in the Superior Court for Fresno County, naming Maricopa and numerous other defendants.  The action was removed to this Court, where it was docketed as *Farid Assemi et al. v. Kevin Assemi et al*, No. 1:23-cv-01741-EPG.   On March 6, 2024, Kevin Assemi filed a First Amended Complaint in that case (the "Prior Complaint"), in which he re-alleged his 31 counts as associated allegations.

78.     Kevin Assemi is a serial fabulist, and the Prior Complaint is a ramble of falsehoods.  Plaintiffs attach the Prior Complaint, attached as Exhibit C, for the limited purpose of establishing that there are actual cases and controversies as to the claims in this Complaint that seek declaratory judgments.

79.     On April 15, 2024, Kevin Assemi voluntarily dismissed the claims in the Prior Complaint without prejudice.

**COUNT I**

**CIVIL THEFT – CALIFORNIA PENAL CODE § 496(c)**

**(Brought by Elevated)**

80.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

81.     Kevin Assemi committed theft.

82.     Kevin Assemi intended to, and did, permanently deprive Elevated of the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AGAINST KEVIN ASSEMI

83.     Kevin Assemi directed Trinity to make payment to Elevated "care of Kevin Assemi," knowing he was not a manager of Elevated nor authorized to receive payments for Elevated.

84.     Kevin Assemi directed Trinity to wire money to accounts he controlled at Bank of America, knowing they were accounts controlled by him, not Elevated, and further knowing that Elevated did not have and had never had accounts at Bank of America.

85.     In addition to supplying false account information to Trinity to steal Elevated's money, Kevin Assemi made numerous false representations to Trinity intended to deceive Trinity and facilitate his theft.

86.     Kevin Assemi received property—the $360,691.63 from Trinity, that was stolen and obtained by him in a manner constituting theft, known the property was stolen by him, and was then withheld it from Elevated, knowing it belonged to Elevated.

87.     Kevin Assemi's actions were willful and malicious.

88.     Kevin Assemi's conduct has injured Elevated in violation of California Penal Code § 496(a).  Pursuant to California Penal Code § 496(c), Maricopa is entitled to $1,082,074.89—"three times the amount of actual damages"—and reasonable attorney's fees.

## COUNT II

## CONVERSION

### (Brought by Elevated)

89.     Each of the foregoing paragraphs are incorporated herein as if separately realleged.

90.     Elevated was entitled to the $360,691.63 that Trinity intended to transfer by wire to Elevated in payment of Elevated's invoices.

COMPLAINT AGAINST KEVIN ASSEMI

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

91.    Kevin Assemi wrongfully and intentionally directed Trinity's payments away from Elevated and to accounts controlled by Kevin Assemi.  In so doing, Kevin Assemi wrongfully dispossessed Elevated of its property rights.

92.    Elevated was damaged by the loss of the $360,691.63 that Kevin Assemi stole.

93.    Kevin Assemi's actions are egregious and reprehensible.  Kevin Assemi was stealing from his business partners and, effectively, his family—people who trusted him, at least when they went into business with him.

94.    Maricopa is entitled to $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial.

## COUNT III

## INTENTIONAL INTERFERENCE WITH

## PROSPECTIVE ECONOMIC RELATIONS

### (Brought by Maricopa and Elevated)

95.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

96.    Kevin Assemi knowingly interfered with Maricopa's economic relationship with AgWest.

97.    Kevin Assemi knowingly interfered with Elevated's economic relationship with AgWest.

98.    Specifically, Kevin Assemi altered the operating agreement and used the forged, fake version to dissuade AgWest from closing the financing for Elevated that was on the verge of closing, including by falsely representing that Kevin Assemi was the majority owner of Elevated.

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

COMPLAINT AGAINST KEVIN ASSEMI

99.     Kevin Assemi made false statements to AgWest suggesting that Maricopa and Maricopa officials had engaged in criminal activity, fraud, and other misconduct.

100.    Kevin Assemi intended his false statements and the forged version of the Operating Agreement to prevent AgWest from closing its loan to Elevated and to disrupt the long term financing relationship between AgWest and Maricopa.

101.    Kevin Assemi's misconduct was independently wrongful as a violation of California common law.

102.    Kevin Assemi knew that his misconduct would result in the disruption of the prospective economic relationship between AgWest and Maricopa, and that was his intent.

103.    Kevin Assemi's intentional misconduct disrupted the perspective economic relationship between AgWest and Maricopa.

104.    As a direct and proximate result of Kevin Assemi's conduct, Maricopa and Elevated have each sustained significant harm and damages in any amount to be proven at trial.

105.    Kevin Assemi's conduct was egregious, wanton, willful and malicious, warranting punitive damages.

## COUNT IV

### BREACHES OF FIDUCIARY DUTIES

#### (Brought by Elevated)

106.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

107.    Kevin Assemi contends that he is the manager of Elevated, and that his removal from that position is invalid.

McDermott Will & Emery LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AGAINST KEVIN ASSEMI

108.   Kevin Assemi is incorrect.  But if Kevin Assemi were correct, then as manager of Elevated he would owe to Elevated fiduciary duties of loyalty and care pursuant to California Corporate Code § 17704.09.

109.   If Kevin Assemi owed Elevated a duty of loyalty, he breached that duty of loyalty by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated.

110.   If Kevin Assemi owed Elevated a duty of care, he breached that duty of care by engaging if intentional misconduct and knowingly violating the law by stealing from Elevated the $360,691.63 that Trinity attempted to pay to Elevated and by transmitting to AgWest, over the wires, the forged version of the Operating Agreement and related false statements, thereby sabotaging AgWest's financing of Elevated.

111.   Elevated was each injured by Kevin Assemi's egregious and malicious misconduct.

### COUNT V

### LANHAM ACT, 15 U.S.C. § 1125

### (Brought by Elevated)

112.   Each of the foregoing paragraphs are incorporated herein as if separately realleged.

113.   In connection of Trinity's purchase of crops from Elevated to pack and market, Kevin Assemi falsely and misleadingly used Elevated's name and Elevated's logo in a manner that was likely to cause, and did cause, confusion and mistake and deceived Trinity as to Kevin Assemi's affiliation, connection, and/or association with Elevated.

114.   Elevated was damaged by such actions, as they resulted in Trinity transmitting $360,691.63 that Trinity intended to pay to Elevated.

115.   Kevin Assemi's actions were willful and malicious.  Additionally, Kevin Assemi's misconduct is continuing.  Kevin Assemi continues to use an "ElevatedAg.com"

email address, continues to represent his mother's house, where he lives, as the principal place of business of Elevated, and, upon information and belief, continues to represent himself as speaking for, involved in the management of, and the majority owner of Elevated.  Kevin Assemi's conduct is causing confusion regarding Elevated and irreparably harms Elevated.

**COUNT VI**

**DECLARATORY JUDGMENT:  NO CIVIL RICO VIOLATION**

**(Brought by Maricopa)**

116.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

117.    Kevin Assemi has alleged that Maricopa violated the civil RICO statutes, 18 U.S.C. §§ 1961(5), 1962(b).  Kevin Assemi filed claims in this Court for violation of the civil RICO statutes.  Kevin Assemi's voluntary dismissal of his civil RICO claims was without prejudice, so an actual case or controversy exists regarding whether Maricopa violated the civil RICO statutes, 18 U.S.C. §§ 1961(5), 1962(b).

118.    Maricopa did not engage in prohibited activities or committed RICO predicate acts.  Maricopa did not engage in a pattern of racketeering activity.  Maricopa did not participate as a principal in racketeering activity.  Maricopa did not derive income from racketeering activity.  Maricopa did not participate, directly or indirectly, in the conduct of the affairs of a RICO enterprise.

119.    Maricopa did not make false or fraudulent representations to AgWest. Farshid and Nader were in fact managers of Elevated with signature authority.  Kevin Assemi has never held a majority interest in Elevated.  He holds a 45 percent interest.

120.    Maricopa is entitled to a declaratory judgment that they did not violate the civil RICO statutes as Kevin Assemi alleges.

COMPLAINT AGAINST KEVIN ASSEMI

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

## COUNT VII

## DECLARATORY JUDGMENT:  NO DTSA VIOLATION

### (Brought by Maricopa)

121.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

122.    Kevin Assemi has alleged that Maricopa misappropriated his trade secrets. Specifically, Kevin Assemi alleges that he has a protectable property right in what he calls "M-Files," which are M-Files, analytic systems, geographic information system, and the data sources, and data structure for each.  ECF 26 ¶ 238.  Kevin Assemi alleges that Maricopa misappropriated the M-Files.

123.    Kevin Assemi's voluntary dismissal of his misappropriation of trade secret claims was without prejudice, so an actual case or controversy exists as to whether Maricopa misappropriated Kevin Assemi's trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.  Kevin Assemi's now-dismissed claim asserts the right and standing to bring a claim against Maricopa pursuant to the California Uniform Trade Secrets Act.  *Id.* ¶ 240.  The elements for such a claim, if they exist, would also support a claim for violation of the federal Defend Trade Secrets Act, as the alleged trade secret is related to Maricopa products that are used in interstate commerce.

124.    Maricopa has not misappropriated Kevin Assemi's trade secret.

125.    "M-Files" is not a trade secret of Kevin Assemi.  Maricopa has not misappropriated "M-Files" from Kevin Assemi, as Kevin Assemi has no rights in "M-Files," nor in any other intellectual property belonging to Maricopa.

126.    Kevin Assemi has not been injured by Maricopa's use of "M-Files."

127.    Maricopa is entitled to a declaratory judgment that it did not misappropriate Kevin Assemi's trade secrets in violation of the federal Defend Trade Secrets Act.

COMPLAINT AGAINST KEVIN ASSEMI

1

**COUNT VIII**

2

**DECLARATORY JUDGMENT:  NO CUTSA VIOLATION**

3

**(Brought by Maricopa)**

4    128.    Each of the foregoing paragraphs are incorporated herein as if separately

5    realleged.

6    129.    Kevin Assemi's voluntarily dismissal of his misappropriation of trade secret

7    claims was without prejudice, so an actual case or controversy exists as to whether

8    Maricopa misappropriated Kevin Assemi's trade secrets in violation of the California

9    Uniform Trade Secrets Act.

10    130.    Maricopa is entitled to a declaratory judgment that it did not misappropriate

11    Kevin Assemi's trade secrets in violation of the California Uniform Trade Secrets Act.

12

**COUNT IX**

13

**DECLARATORY JUDGMENT: MANAGER CLAIMS**

14

**(Brought by Elevated)**

15    131.    Each of the foregoing paragraphs are incorporated herein as if separately

16    realleged.

17    132.    In the Prior Complaint, Kevin Assemi contends that Farshid and Nader are

18    not the validly appointed managers of Elevated and lack signature authority for Elevated.

19    This has impaired Elevated ability to do business.

20    135.    An actual case or controversy exists regarding whether Farshid and Nader are

21    the validly appointed managers of Elevated, with signature authority for Elevated.

22    137.    Elevated is entitled to a declaratory judgment that Farshid did not breach a

23    duty of care to Kevin Assemi, did not breach a duty of care to Elevated, did not breach a

24    fiduciary duty, did not commit unfair business practices, and are not responsible for abuse

25    of control, gross management, and corporate waste.

26

COMPLAINT AGAINST KEVIN ASSEMI

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

141.    Elevated is further entitled to a declaratory judgment Farshid and Nader are the validly appointed managers of Elevated, with signature authority for Elevated.

## COUNTERCLAIM X

## DECLARATORY JUDGMENT:  MEMBER CLAIMS

### (Brought by Maricopa)

142.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

143.    In the Prior Complaint, Kevin Assemi has alleged that Maricopa committed fraud in the inducement, breached the Operating Agreement, breached the implied covenant and obligation of good faith and fair dealing, and misappropriated from Elevated (the "Member Claims").  Kevin Assemi's voluntary dismissal of the Member Claims was without prejudice, so there exists an actual case or controversy regarding whether Maricopa committed fraud in the inducement, breached the Operating Agreement, breached the implied covenant and obligation of good faith and fair dealing, or misappropriated from Elevated.

144.    Maricopa did not commit fraud in the inducement, did not breach the Operating Agreement, did not breach the implied covenant and obligation of good faith and fair dealing, and did not misappropriate from Elevated.

144.    Maricopa made no intentional misrepresentations to Kevin Assemi upon which he relied in signing the Operating Agreement.

145.    Maricopa did not breach the Operating Agreement.

146.    The Percentage Interests listed in the Operating Agreement were the members' respective interests as of the Operating Agreement's execution.

147.    Kevin Assemi did not comply with his own obligations under the Operating Agreement.

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

COMPLAINT AGAINST KEVIN ASSEMI

148.   Kevin Assemi was not damaged by any conduct of Maricopa.

149.   The Operating Agreement was validly amended to permit the sale of a Percentage Interest in Elevated with only a majority interest approving the sale.  Jeremy's and Devon's sales of their Percentage Interests in Elevated to Maricopa was valid.

150.   If Kevin Assemi had been given the opportunity to purchase Jeremy's and Devon's Percentage Interests in Elevated, he could not have done so because he lacked the funds required.

151.   Maricopa did not participate in wire fraud.  The only wire fraud in this case was perpetrated by Kevin Assemi.  Maricopa's representations to AgWest in attempting to obtain a loan were honest and accurate.  Kevin Assemi's representations were fraudulent.

151.   Maricopa did not conspire to take Kevin Assemi's equity in Elevated. Maricopa did not misappropriate or convert Elevated's funds or property for their own benefit.

152.   Maricopa is entitled to a declaratory judgment that they not commit fraud in the inducement, did not breach the Operating Agreement, did not breach the implied covenant and obligation of good faith and fair dealing, and did not misappropriate from Elevated.

## COUNT XI

## DECLARATORY JUDGMENT:  NO WRONGFUL TERMINATION

### (Brought by Maricopa)

153.   Each of the foregoing paragraphs are incorporated herein as if separately realleged.

154.   Kevin Assemi has alleged that Maricopa wrongfully terminated him.  Kevin Assemi's voluntary dismissal of the Prior Complaint was without prejudice, so there exists

COMPLAINT AGAINST KEVIN ASSEMI

McDERMOTT WILL & EMERY LLP
ATTORNEYS AT LAW
LOS ANGELES

an actual case or controversy regarding whether Maricopa wrongfully terminated Kevin Assemi.

155.    Maricopa did not wrongfully terminate Kevin Assemi.  Kevin Assemi's termination was not against public policy.  Kevin Assemi's termination was not retaliatory. Moreover, Kevin Assemi was not a "whistle-blower."  That is yet another self-aggrandizing fantasy.

156.    Maricopa is entitled to a declaratory judgment that they did not wrongfully terminate Kevin Assemi.

## COUNT XII

## DECLARATORY JUDGMENT:  NO VIOLATION OF LABOR CODE 1102.5
### (Brought by Maricopa)

157.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

158.    Kevin Assemi has further alleged that Maricopa violated California Labor Code Section 1102.5.  Kevin Assemi's voluntary dismissal of the Prior Complaint was without prejudice, so there exists an actual case or controversy regarding whether Maricopa violated California Labor Code Section 1102.5.

159.    Maricopa did not violate Labor Code 1102.5 by terminating Kevin Assemi. Kevin Assemi's termination was not retaliatory.  Moreover, Kevin Assemi was not a "whistle-blower."

160.    Maricopa is entitled to a declaratory judgment that they did not breach California Labor Code Section 1102.5.

COMPLAINT AGAINST KEVIN ASSEMI

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

**COUNT XIII**

**DECLARATORY JUDGMENT:  NO BREACH OF SEVERANCE AGREEMENT**

**(Brought by Maricopa)**

161.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

162.    Kevin Assemi has alleged that Maricopa breached a severance agreement with Kevin Assemi.  Kevin Assemi's voluntary dismissal of the Prior Complaint was without prejudice, so there exists an actual case or controversy regarding whether Maricopa breached a severance agreement with Kevin Assemi.

163    Maricopa did not breach any valid and enforceable severance agreement with Kevin Assemi.

164    Maricopa is entitled to a declaratory judgment that it did not breach any valid and enforceable settlement agreement with Kevin Assemi.

**COUNT VIX**

**DECLARATORY JUDGMENT:  OWNERSHIP OF ELEVATED**

**(Brought by Maricopa)**

173.    Each of the foregoing paragraphs are incorporated herein as if separately realleged.

174.    Kevin Assemi contends, in the Prior Complaint and elsewhere, that Maricopa owns less than a 50% interest in Elevated, and that Kevin Assemi owns a majority interest in Elevated.  Kevin Assemi's contentions are incorrect.  An actual case or controversy exists as to the ownership of Elevated.  Kevin Assemi's representations that he owns a majority of Elevated, speaks for Elevated, and can control or influence Elevated's business decisions harms Maricopa's ability to do business and function as the majority owner of Elevated.

COMPLAINT AGAINST KEVIN ASSEMI

175. Maricopa owns a 50% interest in Elevated, Malakan Investments owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated.

176. Maricopa is entitled to a declaratory judgment that Maricopa owns a 50% interest in Elevated, Malakan Investing owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated.

## JURY DEMAND

177. Plaintiffs demand a trial by jury on all claims so triable.

## REQUESTED RELIEF

Plaintiffs respectfully request the following relief:

a. Judgment on each claim in Plaintiffs' favor and against Kevin Assemi;

b. As to Count I for civil theft, an award for Elevated in the amount of $1,082,074.89, and attorney's fees as provided by California Penal Code § 496(c);

c. As to Count II for conversion, an award for Elevated in the amount of $360,691.63 in compensatory damages and punitive damages in an amount to be determined at trial;

d. As to Count III for intentional inference with prospective economic relations, an award for Maricopa and Elevated of compensatory and punitive damages in an amount to be determined at trial;

e. As to Count IV for breach of fiduciary duties, an award for Elevated of compensatory and punitive damages in an amount to be determined at trial;

f. As to Count V for violation of the Lanham Act, 15 U.S.C. § 1125, an award for Elevated of Kevin Assemi's profits, damages, treble damages, and attorney's fees and costs, including all remedies available under 15 U.S.C. § 1117(a), and preliminary and permanent injunctive relief.

COMPLAINT AGAINST KEVIN ASSEMI

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles

g.      As to Count VI, a declaratory judgment that Maricopa did not violate the civil RICO statutes, 18 U.S.C. §§ 1961 & 1962.

h.      As to Count VII, a declaratory judgment that Maricopa did not misappropriate trade secrets in violation of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*.

i.      As to Count VIII, a declaratory judgment that Maricopa did not misappropriate trade secrets in violation of the California Uniform Trade Sections Act.

j.      As to Count XI, a declaratory judgment that Farshid and Nader are the validly appointed managers of Elevated with signature authority for Elevated.

k.      As to Count X, a declaratory judgment that Maricopa (i) did not breach Elevated's Operating Agreement, (ii) did not breach the implied covenant of good faith and fair dealing or any obligation of good faith and fair dealing, and (iii) did not misappropriate from Elevated.

l.      As to Count XI, a declaratory judgment that Maricopa did not wrongfully terminate Kevin Assemi.

m.      As to Count XII, a declaratory judgment that Maricopa did not violate Labor Code 1102.5 by terminating Kevin Assemi.

n.      As to Count XIII, a declaratory judgment that Maricopa did not breach a valid and enforceable severance agreement with Kevin Assemi.

o.      As to Count XIV, a declaratory judgment that Maricopa owns a 50% interest in Elevated, Malakan Investing owns a 5% interest in Elevated, and Kevin Assemi owns a 45% interest in Elevated, and preliminary and permanent injunctive relief.

p.      As to all Counterclaims VI through XIV, all such further and necessary relief based on the Court's declaratory judgments, pursuant to 28 U.S.C. § 2202.

COMPLAINT AGAINST KEVIN ASSEMI

q.   Equitable relief preventing Kevin Assemi from being unjustly enriched or otherwise benefitting from his wrongdoing, including barring Kevin Assemi from recovering any share of money awarded to Elevated;

r.   An award of attorney's fees;

s.   An award of costs, including pursuant to 28 U.S.C. § 1920;

t.   Pre-judgment interest;

u.   Post-judgment interest; and

v.   Other such further relief as the Court may be just and proper.


November 8, 2024                    Respectfully submitted,

                                   MCDERMOTT WILL & EMERY LLP

                              By:  /s/ *Jason D. Strabo*

                                   Jason D. Strabo
                                   Attorneys for Plaintiffs

McDermott Will & Emery LLP
Attorneys At Law
Los Angeles